UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PHILIP H. PELLETIER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 14-30105-MGM |
| CAROLYN W. COLVIN, | * | |
| Acting Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

<u>MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER AND DEFENDANT'S MOTION TO AFFIRM IT</u>
(Dkt. Nos. 15 and 20)

September 11, 2015

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

This is an action for judicial review of a final decision by Carolyn Colvin, the Acting Commissioner of the Social Security Administration ("Commissioner"), regarding an individual's entitlement to Social Security Disability Insurance ("SSDI") benefits pursuant to 42 U.S.C. §§405(g). Philip H. Pelletier ("Plaintiff") asserts the Commissioner's decision denying him such benefits—memorialized in a June 28, 2012 decision of an administrative law judge ("ALJ")—was erroneous. Plaintiff has filed a motion to reverse the judgment and the Commissioner has moved to affirm it. Plaintiff has also filed a response to the Commissioner's motion to affirm.

For the following reasons, the court will deny the Commissioner's motion (Dkt. No. 20), and allow Plaintiff's motion in part (Dkt. No. 15). The matter will be remanded to the Appeals Council to review the operative decision of the ALJ.

II. BACKGROUND

Plaintiff applied for SSDI benefits on April 5, 2010. (Dkt. No. 16, Memo in Support of Motion to Reverse ("Pl.'s Mem.") at 1.) His last date of insurance coverage was March 31, 2009. (Administrative Record ("A.R.") at 19.) Plaintiff alleges disability beginning on September 30, 2008 due to physical and mental impairments. (Pl.'s Mem. at 2-3.) After his application was denied both initially and upon reconsideration, Plaintiff requested a hearing in front of an ALJ which took place on May 25, 2012. (*Id.* at 1.) The ALJ determined the Plaintiff was not disabled. (*Id.*) Plaintiff's appeal was denied by the Appeals Council on April 18, 2014. (*Id.*) A complaint in U.S. District Court was subsequently filed by Plaintiff on June 13, 2014. (Dkt. No. 1, Complaint.)

Plaintiff, who was fifty years old at the time of the hearing, is a high school graduate and has prior work experience as a laborer. (Dk. No. 21, Memorandum in Support of Motion to Affirm ("Def.'s Mem.") at 2.) Plaintiff previously received SSDI benefits from 1989 through 1992. (Pl.'s Mem. at 10.) He found work as a laborer through the Massachusetts Rehabilitation Commission in 1998. (*Id.*, A.R. at 23.) In 2008, Plaintiff was laid off from his job. After substantial efforts to find a new position, Plaintiff filed for SSDI benefits claiming inability to return to work due to cervical pain, knee pain, diabetes, depressive disorder, and mild mental retardation. (*Id.* at 2.)

In connection with his cervical pain, Plaintiff underwent an MRI in 2002 which revealed a C6-7 disc protrusion. (A.R. at 445.) However, Plaintiff did not seek further treatment for his neck pain until 2011. (Pl.'s Mem. at 3.) The subsequent MRI revealed a worsening protrusion at C6-7 as well as a disc bulge at C5-6. (A.R. at 474.) Dr. Robert Van Uitert was the treating physician on both occasions. At the disability hearing, Plaintiff testified that his neck pain had gotten worse starting about two years prior. (*Id.* at 47.) He further testified, "it was bad working, it was bad." (*Id.*) In addition to his cervical pain, Plaintiff also notified his primary care physician, Dr. Allen Joslin, of left knee pain in April of 2009. (Def.'s Mem. at 3.)

With regard to his alleged mental health impairments, Plaintiff was evaluated by Dr. Paul Solomon, a neuropsychologist in January of 1992. Testing revealed intellectual abilities in the borderline to mild mental retardation range. (A.R. at 384.) Dr. Solomon also noted Plaintiff's longstanding emotional problems including signs of depression. (*Id.*) In 2010, Plaintiff met with Doctor Margaret Stephenson for a consultative examination. (*Id.* at 28.) She rated his Global Assessment Functioning score at fifty five, indicating Plaintiff exhibited "moderate symptoms or had moderate difficulty in social, occupational, or school functioning." (*Id.* at 29.) Plaintiff reported anxiety symptoms, noted by Dr. Stephenson, but denied depressive symptoms and any psychiatric hospitalizations or treatment. Dr. Stephenson did not have any other medical records to corroborate Plaintiff's self-reporting.[1] (*Id.* at 401.)

Psychologist, Carol Montgomery, reviewed the evidence and concluded that Plaintiff's mental disorders caused moderate difficulties in maintaining social functioning, concentration, persistence and pace. (*Id.* at 29.) She stated Plaintiff would be capable of attending for a two-hour period, full workday, and full workweek. (*Id.* at 29.) Her assessment was affirmed by Dr. Jon Perlman during reconsideration of the claim. (*Id.* at 30.)

Following the hearing, the ALJ issued a decision denying Plaintiff's application for benefits, after which the Appeals Council denied review. (Pl.'s Mem. at 1.) Plaintiff subsequently filed the instant action and the parties submitted the cross-motions presently at issue.

---

[1] With regard to Plaintiff's self-reporting, the ALJ notes a "significant discrepancy between the claimant's statements and the various documents in the evidence of record." (A.R. at 24.) Plaintiff's treating physicians also suggest Plaintiff's self-reporting is not reliable. Dr. Van Uitert states "[u]nfortunately [Plaintiff] is most likely mildly mentally retarded and the history is somewhat difficult to be certain of." (*Id.* at 477). Dr. Joslin notes Plaintiff is a "[q]uiet man. Says very little. Brief answers to questions." (*Id.* at 469.)

III. STANDARD OF REVIEW

The role of a district court reviewing an ALJ's decision is limited to determining whether the conclusion was supported by substantial evidence and based on the correct legal standard. *See Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). The Commissioner has the responsibility of resolving issues of credibility and weighing conflicting evidence. *Rodriguez v. Sec'y of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). As such, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. 405(g). Substantial evidence means that "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." This is true "even if the record arguably could justify a different conclusion." *Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987).

IV. DISABILITY STANDARD AND THE ALJ'S DECISION

An individual is entitled to SSDI benefits if, among other things, he has an insured status and, prior to expiration of that status, he was under a disability. *Baez v. Astrue*, 550 F. Supp. 2d 210, 214 (D. Mass. 2008) (citing 42 U.S.C. § 423(a)(1)(A) and (E)). Therefore, Plaintiff must establish disability on or before the last date on which he was insured, March 31, 2009. *See id.*

The Social Security Act (the "Act") defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). An individual is considered disabled under the Act,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such

4

>work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A). *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do other work, the application is granted.

*See* 20 C.F.R. §§ 404.1520(a)(4); *Goodermote v. Sec'y of HHS*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, at step one, the ALJ found that the plaintiff had not performed any substantial gainful activity from his alleged onset date of September 30, 2008 through the last date on which he was insured, March 31, 2009. (A.R. at 20.) Moving to step two, the ALJ found that Plaintiff had several severe impairments during this period, specifically knee pain, asthma, depressive disorder, and mild mental retardation. (*Id.*) At the third step, the ALJ determined that Plaintiff's impairments do not, singly or in combination, meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 21.) The ALJ found in step four, that Plaintiff's residual functioning capacity ("RFC") allowed him to perform medium work, as defined in 20 C.F.R. 404.1567(c), except that claimant was "limited to work that did not involve any concentrated exposure to dust, fumes, strong odors, or temperature or humidity extremes." (*Id.* at 22.) He was further limited to simple 1-2 step tasks, and "to work that was taught primarily by demonstration and imposing rare changes in routine". (*Id.* at 23.) In light of this RFC, the ALJ found that Plaintiff was capable of performing past relevant work as a laborer. (*Id.* at 30.) As a result, the

5

ALJ determined that Plaintiff was not disabled and denied Plaintiff's application for SSDI benefits (*Id.*)

V. ANALYSIS

Plaintiff makes three arguments challenging the ALJ's decision. First, Plaintiff asserts that the ALJ inappropriately weighed the evidence. ("Pl.'s Mem." at 4-8.) Second, Plaintiff argues that the ALJ's decision is not supported by substantial evidence. (*Id.* at 8-9.) Lastly, Plaintiff asserts that the ALJ "failed to fully consider evidence of pain, restriction, and disability." (*Id.* at 9-11.) In response, Defendant argues that the ALJ properly considered the findings and opinions of the acceptable medical sources. (Dkt. No. 21, Mem. in Support of the Def.'s Mot. to Affirm the Comm.'s Decision ("Def.'s Mem.") at 8-14.) In addition, Defendant asserts that the ALJ's decision is supported by substantial evidence. (*Id.* at 14-19.) This court discusses only the issue pertaining to the ALJ's weighing of evidence because the court's finding with respect to this issue necessitates remand.

"[T]he ALJ's decision must include a discussion describing how he or she actually determined the claimant's RFC and the evidence upon which he or she relied." *Torrey v. Barnhart*, 2004 WL 97648, at *5 (D.N.H. January 21, 2004). Regardless of its source, the ALJ "will evaluate every medical opinion [he] receive[s]." 20 C.F.R. §§ 404.1527(c) and 416.927(c). Generally more weight is given to opinions from treating sources. *Id.* at §§ 404. 1527(c)(2) and 416.927(c)(2). If "a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is given controlling weight. <u>Id.</u> Even when not given controlling weight, the ALJ "will always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a] treating source's opinion." *Id.*

Accordingly, remand is appropriate when the ALJ fails to indicate what weight, if any, was given to a treating source's opinion, and fails to give "good reasons" in the notice of determination

6

for such omission. *See Mason v. Astrue*, 2008 WL 4822238, at *6 (D. Maine Nov. 4, 2008) (Remanding case when ALJ's "opinion does not indicate what weight was assigned to [doctor's] substantive opinions nor what the "good reasons" for that weight were.")

Here, the ALJ noted Plaintiff's history of cervical pain but he gave no weight to the opinion of the treating physician, Dr. Van Uitert. The ALJ specifically states, "[although] the undersigned notes that the medical evidence of record revealed recurrence of spine problems after the date last insured, the undersigned notes that the claimant did not have cervical complaints from March 27, 2002 through January 20, 2010." (A.R. at 21.) While these dates do fall outside Plaintiff's dates of insurance coverage, a review of the medical evidence and the reports from Dr. Van Uitert reveal a degenerative disc disease that has progressively worsened over time.

In March of 2002, Plaintiff was referred to Dr. Van Uitert for neck pain. EMG and nerve conduction studies were performed and demonstrated "findings consistent with chronic left C7 denervative changes." (A.R. 443.) The subsequent MRI revealed a C6-7 disc bulge, and a more prominent C3-4 bulge. (*Id.* at 445.) Plaintiff was given Motrin, neck exercise instructions, and physical therapy was arranged. (*Id.* at 441.)

Plaintiff underwent a second MRI in August of 2011 which revealed a "[s]ignificant disc disease at C5-C6 and C6-C7." (*Id.* at 474.) Specifically, there was a "[s]light collapse of the disc space with a broad-based disc protrusion which flattens the ventral aspect of the thecal sac and minimally pushes the spinal cord posteriorly," at C6-C7. (<u>*Id.*</u>) At C5-C6, the MRI revealed a "[d]egenerative disc disease with diffuse disc bulging…caus[ing] significant foraminal narrowing." (*Id.*)

Dr. Van Uitert's report from September of 2011 further notes Plaintiff's history of cervical pain. (*Id.* at 477.) "[Plaintiff's] history dates back at least 10 years and probably longer. He recalls even as a teenager he used to pitch in Babe Ruth baseball leagues and he began having pain in his neck and arms at that time. Over the years the pain has gradually become worse." (*Id.*) The ALJ

notes that Plaintiff did not have complaints during the dates of insurance, but Dr. Van Uitert specifically states "it is clear that for at least the past ten years he has been having pain in his neck radiating into the interscapular region down into the arms." (*Id.*)

The ALJ gives no weight to Dr. Van Uitert's reports which are supported by "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). His rationale for doing so rests solely with the dates of the reports, when Dr. Van Uitert unequivocally states that "the pain has gradually become worse" and has existed for "at least the past ten years." (A.R. at 477.) The ALJ clearly failed to "give good reasons in [his] notice of determination or decision," for giving no weight to the treating sources opinion. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

Defendant argues that this oversight is harmless error given the rest of the evidence. This court cannot so conclude. The ALJ noted that at the hearing "claimant betrayed no evidence of pain or discomfort." (A.R. at 26.) "[T]he apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity." (*Id.*) However, when asked about his neck at the hearing, Plaintiff testified that "the pain's worse, the pain is bad." (*Id.* at 47) He further stated that it started to get worse "about two years ago," and "it was bad working, it was bad." (*Id.*)

Essentially, the ALJ gave more weight to his perception of Plaintiff's lack of discomfort at the hearing, than he gave to the medical opinion of Dr. Van Uitert, and Plaintiff's own testimony. Furthermore, this slight weight given to Plaintiff's lack of discomfort, is based on the false premise that Plaintiff had no record of injections for his neck pain. The ALJ noted that "a review of the medical evidence of record…failed to reveal evidence of…injections." (*Id.* at 21.) However, Dr. Van Uitert's report from September 14, 2011, notes that Plaintiff "had the C6-7 epidural steroid injection." (*Id.* at 485.)

8

The ALJ gave no weight to Dr. Van Uitert's reports because they were written after the date of insurance even though Dr. Van Uitert described Plaintiff's pain as the result of a degenerative condition rather than an injury that could heal then recur. In contrast, he gave some weight to his own observations at the hearing which took place eight months later, after Plaintiff had received an epidural steroid injection. This was clearly erroneous.

## VI. CONCLUSION

For these reasons, the Court GRANTS Plaintiff's motion (Dkt. No. 15), to the extent that it requests a remand, in order for the ALJ to properly consider evidence of Plaintiff's cervical pain. The court accordingly DENIES Defendant's motion for an order affirming the Commissioner's decision (Dkt. No. 20).

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge